UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

      - v. -                    :

JOHN R. REYNOLDS,                 :     12 Cr.

         Defendant.          :

- - - - - - - - - - - - - - - - - x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 9|17|12
> ~~INDICTMENT~~

12 CRIM 708

## COUNT ONE
(Racketeering)

The Grand Jury charges:

### Introduction

1.    At all times relevant to this Indictment, the Hospital for Special Surgery, Inc. (the "Hospital") was a corporation founded in 1863, and based on the Upper East Side of Manhattan, New York.  It was, and remains to this day, the oldest orthopedic hospital in the United States.  In addition to engaging in research and clinical trials, and being one of the world's largest academic centers, the Hospital provides a range of medical services, including, but not limited to, orthopedic surgery.  At times relevant to this Indictment, the Hospital employed over 3,000 full-time physicians and staff.

2.    At all times relevant to this Indictment, JOHN R. REYNOLDS, the defendant, was employed by the Hospital.  From in or about 1986 through in or about 1997, REYNOLDS served as the Chief Financial Officer ("CFO") of the Hospital.  In or about



1997, REYNOLDS was promoted to the position of Chief Executive Officer ("CEO"), and served in that capacity as a full-time employee of the Hospital until in or about October 2006, at which time he became a contract employee of the Hospital. REYNOLDS worked for the Hospital as a contract employee from in or about October 2006 to in or about December 2008 in order to effectuate a smooth transition in Hospital leadership from REYNOLDS to a newly hired CEO.

3.    At all times relevant to this Indictment, the Hospital had an intangible right to the honest services of its officers and administrators, including, but not limited to, JOHN R. REYNOLDS, the defendant.

4.    As part of his duty, JOHN R. REYNOLDS, the defendant, was required by the Hospital on an annual basis to complete and sign a written affirmation disclosing any conflict of interest with the Hospital, and disclosing whether he was engaged in any outside consulting work. At no time between 1996 and 2008 did REYNOLDS disclose any conflict of interest to the Hospital. To the contrary, REYNOLDS completed and signed forms affirmatively stating that he had no interests that might present a conflict, real or perceived, with his employment at the Hospital, and that he was not engaged in any outside consulting work.

5.    From at least in or about 1996 up to and including in or about 2007, in violation of the law and his duty to the

Hospital, JOHN R. REYNOLDS, the defendant, engaged in a
racketeering scheme to enrich himself through the solicitation,
extortion and receipt of illegal kickbacks.  Between in or about
1996 and November 2002, REYNOLDS solicited and received kickbacks
totaling approximately $420,000 from at least two different
Hospital vendors, in return for REYNOLDS using his position at
the Hospital to secure contracts and future business for those
vendors.  In addition, between in or about 2000 and 2005, as a
result of REYNOLDS having negotiated payment of an annual bonus
for the benefit of a subordinate employee of the Hospital,
REYNOLDS extorted and received kickbacks totaling approximately
$298,500 from that employee.  Finally, between in or about 2005
and 2007, REYNOLDS solicited and received kickbacks totaling
approximately $670,000 from a healthcare organization located in
the United Kingdom, in return for REYNOLDS using his position at
the Hospital to approve a clinical partnership between the
Hospital and that United Kingdom healthcare company.  Through
this racketeering scheme, REYNOLDS pocketed a total of
approximately $1.4 million in illegal kickbacks, supplementing
the compensation he received from the Hospital, and all the while
deceiving the Hospital by making false statements and by
withholding information from the Hospital's board of directors
related to outside consulting arrangements in which REYNOLDS was

engaged and certain conflicts of interest that would or might prevent him from acting in the best interests of the Hospital.

## The Enterprise

6.   At all times relevant to this Indictment, JOHN R. REYNOLDS, the defendant, was a member and associate of the Hospital.  The Hospital constituted an enterprise as that term is defined in Title 18, United States Code, Section 1961(4), that is, a corporation.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Pattern of Racketeering Activity

7.   From at least in or about 1996 up to and including on or about September 28, 2007, in the Southern District of New York and elsewhere, JOHN R. REYNOLDS, the defendant, being a person employed by and associated with the enterprise described in paragraph 6 above, namely, the Hospital, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), that is, through the commission of the following racketeering acts:

4

<u>Racketeering Act One:</u>
<u>Vendor Kickback Scheme</u>

8.   From at least in or about 1996 up to and including on
or about November 12, 2002, JOHN R. REYNOLDS, the defendant,
engaged in a scheme to commit honest services fraud in which he
solicited and received kickbacks in an amount totaling
approximately $420,000 from two separate vendors ("Vendor-1" and
"Vendor-2") in exchange for securing medical billing business for
those vendors from the Hospital and its staff physicians.

9.   In furtherance of the scheme, JOHN R. REYNOLDS, the
defendant, personally approached various representatives of these
Hospital vendors to convey that he had established an entity, KMC
Healthcare, that existed separate and apart from his employment
with the Hospital and that was created for the purpose of
permitting REYNOLDS to provide consulting services.   In this
capacity, REYNOLDS sought consultancy agreements with each of
these vendors.   In doing so, REYNOLDS made clear, explicitly or
implicitly, that REYNOLDS would secure future business from the
Hospital for the vendors in exchange for hiring him as a
consultant.

10.  As a result of the scheme to defraud, JOHN R. REYNOLDS,
the defendant, received the following sums of money, in the form
of purported consulting fees, during certain time periods between
in or about 1996 and on or about November 12, 2002, from these
vendors which sought to curry favor with REYNOLDS in order to

5

secure future business from the Hospital and its staff
physicians:

| Vendor | Time Period | Amount |
|---|---|---|
| Vendor-1 | 1996 - 2002 | $336,854.71 |
| Vendor-2 | 1999 - 2002 | $ 83,211.92 |

11.   At no time between in or about 1996 and on or about
November 12, 2002 did JOHN R. REYNOLDS, the defendant, disclose
to the Hospital the existence of any consulting arrangement
between himself and Vendor-1 or Vendor-2.  In fact, during each
of these years, REYNOLDS affirmed to the Hospital that he had no
interests that might present a conflict, real or perceived, with
his employment at the Hospital, and that he was engaged in no
outside consulting arrangements.

12.   Moreover, and in addition to his solicitation and
receipt of these kickbacks from Vendor-1 and Vendor-2, as set
forth above, between in or about 2001 and in or about 2003, JOHN
R. REYNOLDS, the defendant, used his position at the Hospital and
his reputation within the healthcare industry to improperly
secure business at other hospitals in the New York City
metropolitan area for at least three separate individuals
("Consultant-1," "Consultant-2," and "Consultant-3"), each of
whom had previously provided consulting services to the Hospital,
in exchange for marketing or finder's fees totaling approximately
$42,500.

*Statutory Allegations*

13.   JOHN R. REYNOLDS, the defendant, committed the
following acts, any one of which alone constitutes the commission
of Racketeering Act One:

<u>Wire Fraud</u>

a.   From in or about 1996, up to and including on or
about November 12, 2002, in the Southern District of New York and
elsewhere, JOHN R. REYNOLDS, the defendant, willfully and
knowingly, having devised and intending to devise a scheme and
artifice to defraud his employer, the Hospital, of the intangible
right to his honest services, did transmit and cause to be
transmitted by means of wire, radio, and television
communications in interstate and foreign commerce, writings,
signs, signals, pictures and sounds for the purpose of executing
such scheme and artifice, to wit, REYNOLDS used and caused to be
used e-mail and facsimile communications in the course of his
scheme to obtain kickbacks from at least two separate vendors
engaged by the Hospital, in violation of Title 18, United States
Code, Sections 1343 and 1346.

<u>Mail Fraud</u>

b.   From in or about 1996, up to and including on or
about November 12, 2002, in the Southern District of New York and
elsewhere, JOHN R. REYNOLDS, the defendant, willfully and
knowingly, having devised and intending to devise a scheme and

artifice to defraud his employer, the Hospital, of the intangible right to his honest services, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposited and caused to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and took and received therefrom, such matters and things, and knowingly caused to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, to wit, REYNOLDS engaged in a scheme to obtain kickbacks from at least two separate vendors engaged by the Hospital, thereby causing certain invoices and checks to be transmitted by United States mail, in violation of Title 18, United States Code, Sections 1341 and 1346.

<u>Racketeering Act Two:</u>
<u>Extortion of Hospital Employee and Bonus Kickback Scheme</u>

14.   From in or about March 2000 through on or about September 9, 2005, JOHN R. REYNOLDS, the defendant, extorted and received from an employee of the Hospital (the "Victim") a portion of certain bonuses that the Hospital paid to the Victim, as kickbacks for REYNOLDS having secured those payments from the Hospital for the benefit of the Victim.

15.   In or about 1998, the Victim, who had begun working at the Hospital in or about 1996 as a consultant with the Materials

Management Department of the operating room, was tasked by certain officials of the Hospital with mediating a royalty dispute between the Hospital and a company specializing in joint-replacement technologies (the "Company"), after negotiations had stalled.  Ultimately, the Victim succeeded in resolving the matter, and the Company agreed to pay the Hospital a total of approximately $26 million over the course of a ten year period.

16.   Thereafter, in or about 2000, and as a result of the Victim having resolved the royalty dispute with the Company in favor of the Hospital, JOHN R. REYNOLDS, the defendant, used his position as CEO of the Hospital to secure payment of an annual bonus to the Victim.  Within days of informing the Victim that he had negotiated payment of that bonus on the Victim's behalf, REYNOLDS informed the Victim that he expected the Victim to pay him half of any bonus money the Victim received in the future.

17.   Beginning on or about March 13, 2000, and continuing until on or about September 9, 2005, the Victim paid JOHN R. REYNOLDS, the defendant, a total of approximately $298,500, from bonuses the Victim received from the Hospital, fearing that failure to do so would lead to the Victim's termination.

*Statutory Allegations*

18.   JOHN R. REYNOLDS, the defendant, committed the following acts, any one of which alone constitutes the commission of Racketeering Act Two:

9

## Extortion

a.    From in or about March 2000, up to and including on or about September 9, 2005, in the Southern District of New York and elsewhere, JOHN R. REYNOLDS, the defendant, willfully and knowingly did commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the Victim, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and under color of official right, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, REYNOLDS forced the Victim to pay REYNOLDS portions of bonuses that the Hospital had paid to the Victim, in violation of Title 18, United States Code, Section 1951.

## Wire Fraud

b.    From in or about March 2000, up to and including on or about September 9, 2005, in the Southern District of New York and elsewhere, JOHN R. REYNOLDS, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud his employer, the Hospital, of the intangible right to his honest services did transmit and cause to be transmitted by means of wire communications in interstate and

foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, to wit, REYNOLDS used and caused to be used wire communications in the course of his scheme to obtain kickbacks from the Victim arising out of bonuses that the Hospital had paid to the Victim, in violation of Title 18, United States Code, Sections 1343 and 1346.

Racketeering Act Three:
Kickbacks from U.K. Organization

19. From at least in or about February 2005 up to and including on or about September 28, 2007, JOHN R. REYNOLDS, the defendant, engaged in a scheme to commit honest services fraud in which he solicited and received kickbacks in an amount totaling approximately $670,000 from a healthcare organization located in the United Kingdom (the "U.K. Organization") in exchange for securing for the benefit of the U.K. Organization a clinical partnership with the Hospital.

20. More specifically, in negotiating and entering into a partnership agreement with the U.K. Organization on behalf of the Hospital, JOHN R. REYNOLDS, the defendant, personally entered into a separate contractual arrangement with the U.K. Organization - without the Hospital's knowledge and at the insistence of REYNOLDS - pursuant to which REYNOLDS would be compensated for purportedly providing advice and other consulting services.

11

21. As a result of having entered into this separate contractual arrangement with the U.K. Organization, JOHN R. REYNOLDS, the defendant, received wire transfers of funds from the U.K. Organization into a bank account that REYNOLDS controlled in the name of KMC Healthcare totaling approximately $117,366 in or about 2005; approximately $399,692 in or about 2006; and approximately $153,205 in or about 2007.

22. At no time between in or about February 2005 and on or about September 28, 2007 did JOHN R. REYNOLDS, the defendant, disclose to the Hospital the existence of any consulting arrangement between himself and the U.K. Organization.  In fact, during each of the years 2005, 2006, and 2007, REYNOLDS affirmed in writing to the Hospital that he had no interests that might present a conflict, real or perceived, with his employment at the Hospital, and that he was engaged in no outside consulting arrangements.

*Statutory Allegation*

23. JOHN R. REYNOLDS, the defendant, committed the following act, which constitutes the commission of Racketeering Act Three:

<u>Wire Fraud</u>

a.  From in or about February 2005, up to and including on or about September 28, 2007, in the Southern District of New York and elsewhere, JOHN R. REYNOLDS, the

12

defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud his employer, the Hospital, of the intangible right to his honest services, did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, to wit, REYNOLDS used and caused to be used e-mail communications in the course of his scheme to obtain kickbacks from the U.K. Organization, in violation of Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Section 1962(c).)

## COUNT TWO
(False Statements to the Federal Government)

The Grand Jury further charges:

24.   The allegations contained in paragraphs one through twenty-one of this Indictment are repeated, re-alleged and incorporated by reference as though fully set forth herein.

25.   On or about March 8, 2008, in the Southern District of New York and elsewhere, JOHN R. REYNOLDS, the defendant, in matters within the jurisdiction of the executive branch of the Government of the United States, willfully and knowingly did falsify, conceal and cover up by trick, scheme and device a material fact, and did make materially false, fictitious and fraudulent statements and representations to a special agent of

the U.S. Department of Health and Human Services, Office of the Inspector General (the "Agent"), to wit, following an in-person interview of REYNOLDS conducted by the Agent in Beverly Hills, California on or about May 5, 2008, REYNOLDS telephoned the Agent in Manhattan, New York, and made the following false statements, among others:

      a.  REYNOLDS denied having heard of Vendor-1, Consultant-1, Consultant-2, or Consultant-3.

      b.  REYNOLDS stated in sum and substance that there would be no reason for the KMC Healthcare bank account that he controlled to have received deposits from any vendor or consultant associated with the Hospital.

      c.  REYNOLDS stated in sum and substance that he had never worked with the Victim in any capacity such that the Victim would be paying him in any way.

      (Title 18, United States Code, Section 1001.)

### FORFEITURE ALLEGATION
(As to Count One)

26.  The allegations contained in Count One of this Indictment are hereby repeated, re-alleged and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963 and Title 28, United States Code, Section 2461(c).  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to JOHN R. REYNOLDS, the

defendant, that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of the defendant's conviction under Count One of this Indictment.

27.   JOHN R. REYNOLDS, the defendant:

a.   has acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.   has an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and

c.   has property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

28.  The interests of JOHN R. REYNOLDS, the defendant, subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to at least $1.4 million.

<u>Substitute Asset Provision</u>

29.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 1962 and 1963.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

16

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### JOHN R. REYNOLDS,

Defendant.

## INDICTMENT

12 Cr.

(18 U.S.C. §§ 1962(c) and 1001.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

9/17/12  Filed  Sealed  Indictment

Cott, J.